DAVID S. GORBATY, Judge.
 

 |, These consolidated appeals involve two class action suits. The captioned matter was filed in Civil District Court for the Parish of Orleans on October 2, 2005, and the other class action entitled
 
 “Oubre v. Louisiana Citizens Fair Plan,”
 
 was filed in 24th Judicial District Court for the Parish of Jefferson in November 2005. The ultimate defendant in each lawsuit was Louisiana Citizens Fair Plan (Citizens).
 
 [1]
 

 Both lawsuits were filed in connection with alleged failings by Citizens to timely adjust claims and/or timely offer to settle claims following Hurricanes Katrina and Rita.
 

 From the record, briefs and oral argument we have gleaned the following chronology. The
 
 Oubre
 
 class was certified in July 2006, and the
 
 Orrill
 
 class was certified in June 2008. From the outset there were conflicts between counsel for the two classes.
 

 |2The Oubre• class definition, which was affirmed by the Louisiana 5th Circuit Court of Appeal, was as follows:
 

 All present or past insureds of Louisiana Citizens Property Insurance Corporation a/k/a LOUISIANA CITIZENS FAIR PLAN, hereinafter referred to as “LCPIC” who on or after August 29, 2005, provided notification of loss resulting from Hurricanes Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss.
 

 The original class definition in
 
 Orrill
 
 signed on June 6, 2008, read:
 

 All persons insured by or through the Louisiana Citizens’ [sic] Fair Plan, and/or the Coastal Plan, underwritten, administered and/or serviced by any one or more of the named defendants, who sustained damages as a result of Hurricane Katrina to their covered personal and/or rental property and/or real property and improvements who have been unable to receive prompt adjustment within thirty days after notification of their loss, and/or who did not receive a written offer to settle within thirty days after receipt of satisfactory proof of loss of that claim, as provided by their policies of insurance.
 

 
 *996
 
 Contemporaneously with the activities in
 
 Orrill,
 
 the
 
 Oubre
 
 case was moving forward in the 24th JDC. Six months prior to certification of the class in
 
 Orrill,
 
 Judge Sullivan, the judge presiding over
 
 Oubre,
 
 approved the class notice, which advised:
 

 At present, this class action covers no other claims of [sic] cause of action other than that clearly set forth in the class definition and effects no other pending litigation, individual and/or class action, brought in the Parish of Jefferson or any other parish which action is not in conflict with the class definition as set forth by this court.
 

 If you have filed your own separate claim as a result of Hurricane Katrina or Rita against Louisiana Citizens which does not make a claim that Louisiana Citizens failed to initiate loss adjustment within thirty | s(30) days after notification of loss, you MAY maintain your own separate lawsuit AND be a member of this class.
 

 By remaining a class member, any claims against Louisiana Citizens for damages arising from their conduct as alleged by the class representatives will be determined in this case and cannot be presented in any other lawsuit.
 

 On October 1, 2008, counsel for the
 
 Or-rill
 
 plaintiffs and for Citizens filed a joint motion to preliminarily approve a settlement between the parties. The total value of the proposed settlement was $35 million. Additionally, Citizens agreed to pay the actual costs incurred by plaintiffs in an amount up to $250,000. Class counsel sought to certify a settlement class defined as follows:
 

 All present or past insured of Louisiana Citizens Property Insurance Corporation, a/k/a Louisiana Citizens Fair Plan, hereinafter referred to as “LCPIC,” who on or after August 29, 2005, provided notification of loss resulting from Hurricanes Katrina and/or Rita to LCPIC, and whose loss adjustment was not initiated within thirty (30) days after notification of loss and/or whose claims were not followed by a written offer to settle within thirty (30) days after receipt of satisfactory proof of loss.
 

 The Stipulation of Settlement that accompanied the motion for approval specifically stated: “The parties herein acknowledge that this Compromise Agreement, that is entered between the parties to avoid further litigation, is favored by law, has a force equal to the authority of things adjudged and thus has
 
 res judicata
 
 effect, as per provisions of La. Civ.Code Art. 3078, including members of the class as found in the ‘class definition’ below.” [emphasis added]. The referenced definition is identical to the one found in the motion to approve the settlement.
 

 14A preliminary approval order was signed by the court on October 1, 2008. The order reiterated the class definition, appointed the attorneys to represent the settlement class, and appointed a claims administrator. The order further approved the class notice of proposed settlement, set an “opt out” date, a deadline to object to the settlement, and set a fairness hearing date for the approval. The class notice informed the potential class members that the “opt out” date was December 1, 2008, and that all claims forms for those wishing to remain in the class must be postmarked no later than December 11, 2008. The fairness hearing was scheduled for December 15, 2008.
 

 On October 29, 2008, Judge Sullivan issued a temporary restraining order to Citizens restraining them 1) from processing any claim form by an
 
 Oubre
 
 class member (as per
 
 Oubre
 
 class definition); 2) from considering the absence of receipt of an “opt out” form to be a consent by an
 
 Oubre
 
 class member to be included in
 
 Orrill;
 
 3)
 
 *997
 
 from taking any action to include, enforce and/or apply the
 
 Orrill
 
 settlement stipulation against any member of the
 
 Oubre
 
 class; 4) from filing pleadings in
 
 Orrill
 
 designed to fund the qualified trust account, and/or authorizing distribution of any funds from that account to
 
 Oubre
 
 class members; 5) from communicating with any
 
 Oubre
 
 class member; and 6) from participating in any fairness hearing in
 
 Orrill
 
 if the purpose of said participation is to seek to include, involve, affect, or impact on the
 
 Oubre
 
 class members.
 

 Upon learning of the temporary restraining order in Jefferson Parish, on October 29, 2008
 
 Orrill
 
 counsel filed in CDC a motion for contempt against
 
 Oubre
 
 counsel, seeking sanctions, penalties and attorneys’ fees.
 

 lfiA hearing was held on November 10 in which the court heard three motions: 1) the above referenced motion for contempt; 2) a motion to enforce the proposed
 
 Onill
 
 settlement; and 3) a petition for a temporary restraining order, preliminary injunction, and permanent injunction filed by
 
 Orrill
 
 counsel against
 
 Oubre
 
 counsel. The petition alleged numerous breaches of the Code of Professional Responsibility, mainly that employees of Beevers & Beevers were contacting members of the
 
 Orrill
 
 settlement class by telephone and disseminating false information concerning the settlement. The petition also alleged that Beevers & Beevers’ employees were attempting to get
 
 Onill
 
 class members to “opt out” of
 
 Orrill
 
 and to sign a retainer agreement with Beevers
 
 &
 
 Beevers.
 
 Or-rill
 
 counsel sought to have
 
 Oubre
 
 counsel prohibited from making any further contact with
 
 Orrill
 
 class members. After a hearing on the 10th, the trial court rendered a judgment on November 21, holding
 
 Oubre
 
 counsel in contempt, granting sanctions, penalties and attorneys’ fees.
 
 [2]
 

 On November 13, the trial court issued the temporary restraining order restraining the
 
 Oubre
 
 counsel from:
 

 [Contacting any member of the settlement class, as defined by the Court on October 1, 2008, in its class definition, by any means whatsoever, including telephone, fax, email, personal contact, correspondence, advertisement or any other form of communication whatsoever without leave of court.
 

 The court denied
 
 Onill
 
 counsels’ request to have a curative notice mailed to
 
 Orrill
 
 class members.
 

 Prior to a writ being taken by the
 
 Oubre
 
 counsel on the temporary restraining order, the trial court reversed itself and ordered that a curative |(inotice be issued to counter the alleged effect of the action taken by
 
 Oubre
 
 counsel.
 

 On December 1,
 
 Oubre
 
 counsel sought a writ from this Court. In
 
 Orrill v. Louisiana Citizens Fair Plan,
 
 2008-C-1468, December 1, 2008, this Court granted the writ and stated:
 

 The Relators, counsel for the
 
 Oubre
 
 Class, have the right to communicate with their clients under the circumstances of this case. The trial court abused its discretion by prohibiting the Relators from communicating with their own clients. The trial court’s temporary restraining order to the extent it prohibits Relators from communicating with their clients is hereby dismissed.
 

 Following the ruling from this Court, in a supplemental memoranda in support of the temporary restraining order,
 
 Onill
 
 counsel alleged that
 
 Oubre
 
 counsel was mailing a letter to
 
 Orrill
 
 class members. A copy of a letter on Beevers & Beevers letterhead was attached to the memorandum. It read:
 

 
 *998
 
 WARNING!!
 

 You probably have received paperwork regarding
 

 LA CITIZENS INSURANCE CO. CLASS ACTION
 

 This paperwork is an attempt to get you to settle
 

 For less than $1,000.
 

 BE ADVISED THAT this paperwork DID NOT come
 

 from Beevers & Beevers, LLP, the Court Appointed
 

 Attorneys for the Class Action Lawsuit against
 

 LA Citizens Insurance Co.
 

 UNDER THE LAW YOU CAN RECEIVE AS MUCH
 

 AS $5,000.00 FOR EACH POLICY/PROPERTY!!
 

 Please call us (504) 361-4287 ASAP!!!
 

 On December 5, the trial court conducted a trial to decide if the temporary restraining should be made a preliminary injunction. On December 22, a judgment was rendered,
 
 [3]
 
 restraining
 
 Oubre
 
 counsel from contacting members of the
 
 Orrill
 
 17class, using the exact language that was contained in the prior temporary restraining order. In addition, the judgment explained that
 
 Oubre
 
 counsel “are allowed to contact them own clients who are in the
 
 Oubre
 
 class action, except that defendants-in-rule are prohibited from disseminating any misleading, or false information about the terms of the settlement in the above-captioned matter to anyone.”
 

 From this judgment,
 
 Oubre
 
 counsel filed a devolutive appeal, which has been consolidated with the appeal of the contempt rule. In the 2009-CA-0566 appeal,
 
 Oubre
 
 counsel allege that because the
 
 Omll
 
 settlement class and the
 
 Oubre
 
 class has significant overlap, the preliminary injunction is difficult to interpret, and arguably prevents
 
 Oubre
 
 counsel from communicating with their own clients.
 

 LAW AND ANALYSIS:
 

 Article 3601 of the Louisiana Code of Civil Procedure provides in part: “An injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; ...” La.Code Civ. Proe. art. 3601 A. To obtain a preliminary injunction, a petitioner must show that he will suffer irreparable injury in the absence of an injunction, that he is entitled to the relief sought, and that he can make a
 
 prima facie
 
 showing that he will prevail on the merits.
 
 Desire Narcotics Rehabilitation Center, Inc. v. State of La., Dept of Health & Hospitals,
 
 07-0390, p. 3 (La.App. 4 Cir. 10/17/07), 970 So.2d 17, 20.
 

 |SA preliminary injunction is an interlocutory procedural tool designed to preserve the status quo between the parties, pending a trial on the merits.
 
 Id.,
 
 07-0390, p.4, 970 So.2d at 20. The trial court has great discretion to grant or deny relief.
 
 Id.
 
 An appellate court will not disturb a trial court’s judgment absent an abuse of discretion.
 
 Id.
 

 Based on oim review of a fragmented record, the dispute giving rise to the dueling temporary restraining orders arose when the trial court in the
 
 Orrill
 
 case enlarged the class as originally defined. It did so when it approved the proposed settlement between the
 
 Orrill
 
 class and Citizens, which settlement included a “new” class definition which sub
 
 *999
 
 sumed persons originally belonging to the
 
 Oubre
 
 class only.
 

 In
 
 Gulf Oil Co. v. Bernard,
 
 452 U.S. 89, 101-102, 101 S.Ct. 2193, 2200-2201, 68 L.Ed.2d 693 (1981), a case with striking similarities to this one, Gulf Oil and the Equal Employment Opportunity Commission (EEOC) entered into an agreement whereby Gulf Oil would contact persons who had filed discrimination claims against it, and offer a settlement, provided the complainants signed a release for further claims. Some of the recipients of the Gulf Oil letter consulted with attorneys, and a class action was subsequently filed on behalf of the complainants. 452 U.S. at 91-92,101 S.Ct. at 2195-96. Gulf Oil sought a temporary restraining order to prohibit the class attorneys from contacting their clients, citing interference with Gulf Oil’s attempt to settle the claims. The district court issued a temporary restraining order banning all communications concerning the class |flaction between parties or their counsel and any actual or potential class member who was not a formal party. 452 U.S. at 92-93,101 S.Ct. at 2196.
 

 Gulf Oil then sought a modification of the order, allowing it to continue to contact class members, soliciting releases in exchange for backpay. Class counsel responded that it needed to communicate with class members to obtain information about the case and to inform class members of their rights. Oral argument, was heard but no evidence was taken. 452 U.S. at 93-94,101 S.Ct. at 2196.
 

 Other modifications were sought and hearings were held, resulting in an order that “imposed a complete ban on all communications concerning the class action or potential class member who was not a formal party, without the prior approval of the court.” Examples were given of forbidden communications such as solicitation of potential or actual class members, and any statements, “which may tend to misrepresent the status, purposes and effects of the class action” or “create impressions tending without cause, to reflect adversely on any party, any counsel, this Court, or the administration of justice.” The order permitted communications initiated by the client, and communications in the regular course of business. If the attorney asserted a constitutional right to communicate, the attorney was to file with the court a copy of the communication within five days. Gulf Oil, on the other hand, could freely communicate with anyone concerning the settlement agreement. 452 U.S. at 94-95,101 S.Ct. at 2197.
 

 Upon review, the Supreme Court considered the authority of the district court to impose broad limitations on communications between named plaintiffs | mand their counsel to prospective class members, and more specifically, whether the order in the case below is “consistent with the general policies embodied in Rule 23, which governs class actions in federal court.”
 
 [4]
 
 452 U.S. at 99,101 S.Ct. at 2199.
 

 The Court concluded that the order was an abuse of discretion. Although the Court recognized the potential for abuses in class-action litigation, the mere possibility of abuses “does not justify routine adoption of a communications ban that interferes with the formation of a class or the prosecution of a class action in accordance with the Rules.... [I]n the absence of a clear record and specific findings of need.”
 
 *1000
 
 452 U.S. at 103-104, 101 S.Ct. at 2201-2202.
 

 At the hearing on the preliminary injunction, the testimony was taken of two persons who were both
 
 Orrill
 
 and
 
 Oubre
 
 actual or potential class members. According to his testimony, Mr. Henry
 
 [5]
 
 stated that the property insured by Citizens was located in the Lake Charles area. Thus, any claim made by the Henry’s would be in relation to Hurricane Rita. Originally, the
 
 Orrill
 
 class did not include claims for Hurricane Rita damages; therefore, the Henry’s were potential members of the
 
 Oubre
 
 class only. Mrs. Henry’s name was provided to
 
 Oubre
 
 counsel during discovery. It was not until the
 
 Orrill
 
 class definition was expanded, did the Henry’s become potential
 
 Orrill
 
 class members also. Hence,
 
 Oubre
 
 counsel 1 n maintained a duty to represent the Henry’s. The Henry’s
 
 were
 
 sent a warning letter.
 

 Floyd Miles testified that he received a letter from the Beevers
 
 &
 
 Beevers firm. He called the firm to get more information, but when he stated that he had already submitted a claim form for the
 
 Or-rill
 
 case, the person answering the call told him there was nothing that Beevers & Beevers could do for him, and terminated the call.
 

 Michelle Lirette testified that she was hired by Beevers & Beevers to contact people identified by Citizens as potential class members. The purpose of the call was to inform
 
 Oubre
 
 class members of the ramifications of the proposed settlement in
 
 Orrill,
 
 i.e., that the
 
 Omll
 
 settlement would preclude them from receiving any monies in the
 
 Oubre
 
 case. It was her understanding that the people she called were members of both classes. Ms. Lir-ette admitted that she did tell some people that attorney’s fees would be deducted from the settlement in
 
 Omll,
 
 because that was her understanding. This admission differed from her testimony at the November 10 hearing, wherein she stated that two of the
 
 Oubre
 
 attorneys told her that attorney’s fees would be deducted.
 

 The only other person to testify at the hearing was Suzanne Don de’Ville, the director of litigation for Citizens, explained that it was her understanding that the proposed settlement in
 
 Orrill
 
 would settle all claims under Orrill.
 

 Boxes of documents were submitted as evidence, in addition to the above testimony. In that respect, this case differs from
 
 Gulf Oil v. Bernard, supra.
 
 li2However, the evidence submitted does not lead us to a different result. We find that the trial court abused its discretion when it issued the preliminary injunction. It is clear that persons who were once only
 
 Oubre
 
 actual or potential class members became actual or potential class members in
 
 Orrill
 
 when the trial court expanded the definition of the
 
 Omll
 
 class. These persons remained the clients or potential clients of the
 
 Oubre
 
 counsel, and those counsel maintained an obligation to inform and advise their clients of the ramifications of the proposed settlement in
 
 Omll.
 
 Although, in our opinion, the “warning letter” could have been worded differently, we find it does not contain any untrue or misleading statement. If the members of either class were confused, it is with good reason. Attorneys were appointed for these persons to advise and guide them through the legal process. The preliminary injunction improperly hindered the
 
 Oubre
 
 counsel from representing their clients.
 

 Accordingly, for the reasons set forth above, we reverse the judgment of the trial
 
 *1001
 
 court and vacate the preliminary injunction. This ruling effectively renders the appeal numbered 2009-CA-0568 moot.
 

 JUDGMENT REVERSED; PRELIMINARY INJUNCTION VACATED.
 

 [1]
 

 . Another class action,
 
 Chalona v. Louisiana Citizens Fair Plan,
 
 was filed in St. Bernard Parish, but was later incorporated into the
 
 Orrill
 
 lawsuit. It is not germane to this disposition.
 

 [2]
 

 . This judgment was appealed suspensively and is the subject of No. 2009-CA-0568.
 

 [3]
 

 . This judgment is the subject of appeal No. 2009-CA-0566.
 

 [4]
 

 . Rule 23(d) of the Federal Rules of Civil Procedure provides: "(d) ORDERS IN CONDUCT OF ACTIONS. In the conduct of actions to which this rule applied, the court may make appropriate orders: ... (3) imposing conditions on the representative parties or on intervenors ... [and] (5) dealing with similar procedural matters.” (as cited and relied upon in
 
 Gulf Oil,
 
 452 U.S. at 99, 101 S.Ct. at 2199.)
 

 [5]
 

 . There was much discussion about Mr. Henry’s status as a class member, i.e., his wife actually owned the property. We will forego a discussion on the law of agency.